```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                Civil No. 07-04522(DSD/SRN)
```

Antoine Khoury,

       Plaintiff,

v.                                                   **ORDER**

Philips Medical Systems,

       Defendant,

and

ReliaStar Life Insurance Company,

       Intervenor.

    Robert T. Brabbit, Esq., Brabbit & Salita, P.A., 100 South Fifth Street, Suite 450, Minneapolis, MN 55402 and Charles T. Hvass, Jr., Esq. and Hvass, Weisman & King, Chartered, 825 Nicollet Mall, Suite 102, Minneapolis, MN 55402, counsel for plaintiff.

    Elisa M. Hatlevig, Esq., Joseph E. Flynn, Esq., Leonard J. Schweich, Esq. and Jardine, Logan & O'Brien, 8519 Eagle Point Boulevard, Lake Elmo, MN 55042, counsel for defendant.

    Ryan J. Burt, Esq., Gregory A. Bromen, Esq. and Halleland, Lewis, Nilan & Johnson, 120 South Sixth Street, Suite 400, Minneapolis, MN 55402, counsel for intervenor.

This matter is before the court on defendant Philips Medical Systems'[1] ("Philips") motion for summary judgment. After a review of the file, record and proceedings herein, and for the following reasons, the court grants Philips' motion.

---

[1] Philips is a Delaware corporation with its principal place of business in New York.

## BACKGROUND

This product liability case arises out of an alleged injury suffered by plaintiff Antoine Khoury[2] ("Khoury") on October 31, 2003. Khoury is an interventional cardiologist and was performing a coronary angiogram in catheterization laboratory 5 ("Cath Lab 5") of Regions Hospital in St. Paul, Minnesota, at the time of his injury. (Khoury Dep. 40.) Cath Lab 5 is outfitted with an Integris BH5000 (the "BH5000") that Philips manufactured and installed. The BH5000 includes a monitor bank and a radiation protection shield ("RPS") that are mounted to a ceiling track system. The monitor bank and RPS move along the same track. As a result, movement of the monitor bank causes the RPS to move, and vice versa. In addition, an articulating arm enables the RPS to move up and down.

At the beginning of the procedure, Khoury positioned the RPS near the patient's right femur and the monitor bank near the patient's feet, and began to insert a femoral catheter. (Id. at 45-46.) Meanwhile, without warning Khoury, a nurse moved the monitor bank, causing the RPS to move. (Id. at 46-47.) Khoury grabbed the RPS with both hands to prevent it from striking the patient. According to Khoury, the articulating arm locked in place and the RPS could not move upwards. While holding the RPS, Khoury felt pain radiating from his neck to low back. (Id. at 73.)

---

[2] Khoury is a citizen of Minnesota.

2

Khoury then told the nurse to stop moving the monitor bank. Once the movement stopped, Khoury released the RPS.

On October 2, 2007, Khoury filed a one-count complaint in state court against Philips and Mavig GmbH,[3] alleging that the defective design of the BH5000 caused him permanent physical injuries. Philips timely removed. The court now considers Philips' June 30, 2009, motion for summary judgment.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

---

[3] The court dismissed Khoury's action against Mavig GmbH on February 9, 2009. (Doc. No. 28.)

3

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II. Statute of Limitations

As an initial matter, the court must determine whether Khoury's claim is time barred. Philips argues that Khoury's claim is untimely under Minnesota Statutes § 541.051, which provides that:

> no action by any person in contract, tort, or otherwise to recover damages for ... bodily injury ... arising out of the defective and unsafe condition of an improvement to real property, shall be brought against any person performing or furnishing the design, planning, supervision, materials or observation of construction or construction of the improvement to real property ... more than two years after discovery of the injury.

Minn. Stat. § 541.051, subdiv. 1(a). According to Philips, Khoury bases his claim on an alleged defect in the ceiling track system.

Philips asserts that the ceiling track system is an improvement to real property governed by § 541.051. It is undisputed that Khoury filed his claim outside of § 541.051's two-year limitation.

Khoury claims, however, that he was injured by the BH5000, not the ceiling track system. Specifically, Khoury attributes his injury to the locking of the articulating arm. Both parties agree that the BH5000 is "equipment or machinery" that is exempt from the two-year limitations period. See id. § 541.051, subdiv. 1(e) ("The limitations prescribed in this section do not apply to the manufacturer ... of any equipment or machinery installed upon real property."); Red Wing Motel Investors v. Red Wing Fire Dept., 552 N.W.2d 295, 297 (Minn. Ct. App. 1996) (distinguishing between improvements to real property and equipment or machinery). Therefore, Khoury's claim is not time barred by § 541.051.

Anticipating this conclusion, Philips next argues that Khoury's claim is barred by Minnesota Statutes § 541.05, which establishes a four-year limitations period for "any action based upon the strict liability of the defendant and arising from the manufacture, sale, use or consumption of a product." Minn. Stat. § 541.05, subdiv. 2; see Marcon v. Kmart Corp., 573 N.W.2d 728, 730 (Minn. Ct. App. 1998) (under Minnesota law, manufacturers are strictly liable for injuries resulting from a defectively designed product) (citing McCormack v. Hankscraft Co., 154 N.W.2d 488, 497 (Minn. 1967)). A plaintiff's claim accrues, and the statute of

5

limitations begins to run when two elements are present: "(1) a cognizable physical manifestation of the disease or injury, and (2) evidence of a causal connection between the injury or disease and the defendant's product." Klempka v. G.D. Searle & Co., 963 F.2d 168, 170 (8th Cir. 1992).

Citing the following testimony, Philips maintains that Khoury has admitted that by July 2003, his injury was apparent and that evidence linked it to the BH5000:

| | |
|---|---|
| [Attorney:] | Now, I believe you indicated previously that [the October 31, 2003, incident] was the second occasion on which you had felt some symptoms in your neck? |
| [Khoury:] | Correct. |
| [Attorney:] | Okay. And the first time you had ever had symptoms in your neck was in June or July 2003? |
| [Khoury:] | Correct. |
| [Attorney:] | Was that during a procedure? |
| [Khoury:] | Yes.... |
| [Attorney:] | In June or July 2003, what type of symptoms were you experiencing? |
| [Khoury:] | Well, it started initially when I was trying to hold onto the shield when the nurse was moving the monitor. I felt some mild pain shooting from my right neck to the middle of my scapula, I would say, on the right side. Then during the next procedure I was putting in a pace maker, I reached up, and I felt a sharper pain. |
| [Attorney:] | This is the same day? |

> [Khoury:] Same day. That went down to the tip of my scapula. It was more severe. It made me kind of freeze for about a minute and then it went away. Then after that I started noticing in the morning when I wake [sic] up some soreness in my neck or if I ride the bicycle. And that stayed like this for about a month. But it wasn't anything severe or that I consider significant.
>
> [Attorney:] So, it's fair to say by sometime in August you didn't – you were not experiencing any more symptoms in your cervical spine?
>
> [Khoury:] Yeah, correct.
>
> [Attorney:] And the next time you experienced any symptoms was on October 31, 2003?
>
> [Khoury:] Correct.

(Khoury Dep. 71-72.) According to Philips, Khoury's claim accrued in July 2003, and Khoury should have filed his lawsuit by July 2007.

In response, Khoury contends that he experienced only temporary symptoms in July and that it was not until October 31, 2003, that he sustained a permanent, actionable injury. (Pl's Mem. Opp'n 32.) Moreover, Khoury alleges that his injury was caused by the locking of the articulating arm, an event that first occurred on October 31, 2003. (Id.)

Minnesota's statute of limitations was not intended "to provoke the premature commencement of claims for temporary sickness or discomfort. Rather, the plaintiff [is] entitled to wait until the cause has been rationally identified." Hildebrandt v. Allied

7

Corp., 839 F.2d 396, 399 (8th Cir. 1987). Viewing the evidence in a light most favorable to Khoury and drawing all reasonable inferences in his favor, the court determines that a genuine issue of material fact exists as to when his claim accrued. A reasonable juror could find that Khoury suffered only temporary discomfort in July 2003 and that it was not until October 31, 2003, that his injury and its cause became apparent. Accordingly, the court determines that summary judgment is not warranted on this basis. Compare Tuttle v. Lorillard Tobacco Co., 377 F.3d 917, 922 (8th Cir. 2004) (summary judgment not warranted when conflicting evidence of causation exists) with Klempka, 963 F.2d at 170 (summary judgment warranted when plaintiff clearly knew product caused injury but did not file suit).

**III. Defective Design**

To survive summary judgment, Khoury must establish a genuine issue of material fact as to whether (1) the BH5000 was in a defective condition that rendered it unreasonably dangerous to him; (2) the defect existed when it left Phillips' control; and (3) the defect was the proximate cause of his injury. See Drager v. Aluminum Indus. Corp., 495 N.W.2d 879, 882 (Minn. Ct. App. 1993) (citing Bilotta v. Kelley Co., 346 N.W.2d 616, 623 n.3 (Minn. 1984)).

To prove the first element, Khoury relies solely on the expert testimony of Dr. Robert Andres ("Andres"). In a report, Andres concluded that:

> [t]he design and construction of the ceiling-mounted track system was fundamentally flawed and created excessive biomechanical stresses in the necks and shoulders of cardiologists like Dr. Khoury when they had to resist [RPS] motion when the monitor banks were moved. In particular, the combined effect of coupling the Y-direction motion of the monitor bank with the positioning of the [RPS] through articulating struts that could become co-linear and hence avoid pivoting at the articulation was foreseeably hazardous.

(Andres Dep. Ex. 2 at 9.) Philips, however, argues that summary judgment is warranted because Andres' testimony is inadmissible.

### A. Expert Testimony

"The admissibility of expert testimony in diversity cases is governed by federal law." Unrein v. Timesavers, Inc., 394 F.3d 1008, 1011 (8th Cir. 2005). Federal Rule of Evidence 702 provides that:

> [i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, the court acts as a gatekeeper to determine "whether the witness is qualified to offer expert testimony." Schmidt v. City of Bella Villa, 557 F.3d 564, 570 (8th Cir. 2009) (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993)). An expert must possess the "knowledge, skill, experience, training or education sufficient to assist the trier of fact." Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1100 (8th Cir. 2006) (quotation and citation omitted). This standard is satisfied when the expert's testimony "advances the trier of fact's understanding to any degree." Id. "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." Id. Nonetheless, Rule 702 "requires that the area of the witness's competence matches the subject matter of the witness's testimony." Id. at 1101 (quotations and citations omitted).

Rule 702 also requires the court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Schmidt, 557 F.3d at 570 (citing Daubert, 509 U.S. at 589). The court considers a number of nonexclusive factors when determining the reliability of an expert's opinion, including:

> (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether the theory has been generally accepted; ... (5) whether the expertise was developed for litigation or naturally flowed from the expert's research;

> (6) whether the proposed expert ruled out other alternative explanations; and (7) whether the proposed expert sufficiently connected the proposed testimony with the facts of the case.

Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686-87 (8th Cir. 2001) (citations and quotations omitted). This "flexible and fact specific" evidentiary inquiry allows the court to "use, adapt or reject [the] factors as the particular case demands." Unrein, 394 F.3d at 1011. The proponent of the expert testimony bears the burden of proving its admissibility by a preponderance of the evidence. See Lauzon, 270 F.3d at 686.

### 1. Qualifications

Khoury maintains that Andres, an ergonomist, is qualified to testify on two subjects: the amount of force and biomechanical stress that Khoury allegedly experienced while holding the RPS, and the causal connection between the flawed design of Cath Lab 5, the BH5000, and Khoury's injury. Khoury has proven by a preponderance of the evidence that Andres is an expert in ergonomics. Andres has a PhD. in bioengineering, is president of Ergonomic Engineering, Inc. and has written numerous scholarly articles in this field. (Andres. Dep. Ex. 1.) Therefore, Andres may testify as an expert on the amount of force Khoury allegedly endured while holding the RPS.

Khoury, however, has not proven that Andres is qualified to testify as an expert on the design of Cath Lab 5 or the BH5000. No

evidence before the court suggests that Andres is trained, experienced or educated in the design of medical devices or laboratories. Therefore, Andres may not provide expert testimony on the alleged design defects. See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715 (8th Cir. 2001) (expert cannot testify beyond scope of expertise).

    **2. Reliability**

Furthermore, even if Andres was qualified to testify about the design of the BH5000, the court would exclude his testimony as unreliable. Specifically, Andres' opinions are questionable because the methods he employed did not replicate the factual circumstances that allegedly caused Khoury's injury. For example, when Andres tested the BH5000, the monitor bank and RPS were mounted to two separate ceiling tracks. (Andres Dep. Ex. 2 at 7.) Andres never examined the configuration of the BH5000 that led to Khoury's claim. Furthermore, Andres measured "how much force it took to start the monitors moving on their track from a stationary position, and how much force it took to stop the motion of the monitors." (Id.) Andres did not assess the force Khoury experienced while attempting to stop the RPS from moving. Aside from measuring the width of the RPS, Andres performed no tests on the RPS or its articulating arm. Andres' opinion that the BH5000 was in a defective, unreasonably dangerous condition therefore rests on entirely different facts than those alleged by Khoury.

Andres' opinions are also unreliable because he did not consider an alternative cause of Khoury's injury: the nurse's failure to inform Khoury before she moved the monitor bank. Khoury argues that Andres could not have considered the nurse's alleged deviation from standard operating procedure because no procedure existed. This argument, however, belies Khoury's own testimony that it was "common practice" for a nurse to inform the physician prior to moving the monitor. (Khoury Dep. 49; see also Morrison Dep. 43.) Whether Khoury was injured by the nurse's actions, rather than the allegedly defective condition of the BH5000, remains an open question. Therefore, Andres' failure to consider this possible alternative further undermines his opinions. See Ehlers v. Siemens Med. Solutions USA, Inc., 251 F.R.D. 378, 388 (D. Minn. 2008) (expert's opinion unreliable in part due to failure to consider alternative causes of accident).

Based on the foregoing, and after carefully examining Andres' expert report, the court concludes that Andres is not qualified to testify about the design of the BH5000 and, even if qualified, his proposed testimony is unreliable and must be excluded. Absent the testimony of Andres, Khoury's defective design claim cannot survive summary judgment because he has proffered no other evidence that the BH5000 was in a defective condition that rendered it unreasonably dangerous.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. No. 46] is granted. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 23, 2009

s/David S. Doty
David S. Doty, Judge
United States District Court